Good morning, please be seated. We'll hear argument in Knight First Amendment v. Donald J. Trump. Good morning, Your Honor. Jennifer Utrecht, may it please the Court. The at-real Donald Trump account at issue in this case is a Twitter account created by Donald Trump before he became president that he has control over independent of his presidency and he has exercised the ability to block people from that personal account, an ability he shares in common with all Twitter users. In holding that this was a First Amendment violation, the District Court made two critical errors. First, the District Court incorrectly concluded that Donald Trump was wielding the power of the federal government when he blocked plaintiffs from the at-real Donald Trump account. And second, the Court incorrectly concluded that the at-real Donald Trump account was a forum from which plaintiffs were being excluded. Are you arguing that the only thing independent of his presidency in the account is his blocking or the account itself is independent of his presidency? Are you still maintaining that position or just the blocking? The blocking, Your Honor. So of course, when you're trying to analyze whether or not state action or government action is being invoked, you look at the particular conduct at issue and you ask whether the particular conduct at issue is wielding the power of the government, whether state, whether it is exercising a privilege or authority that has been given to the defendant by virtue of their office. And of course, the blocking. So his Twitter account is a designated public forum then, is that what you're saying? No, Your Honor. Is it a public forum? The question I ask is whether you're claiming the only private action he took was the blocking of these people. Is the Twitter account at-real Donald Trump, is that a public forum? No, Your Honor. And that goes to the second critical error by the district court here. We believe that the state action question, whether blocking itself is government authority, is a threshold question that should be addressed even before the public forum. Because of course, if there's no state action, there can't be a First Amendment violation. The Constitution does not prohibit private parties from engaging in conduct that inhibits expressive conduct. So is your argument that all of this is action by, oh sorry, on the defense side, that it's a private party, everything's private? Because if you are asking that, it's curious to me that the Department of Justice is here representing essentially a private entity. Well, so Your Honor, Donald Trump was sued in his official capacity and it is the department's duty to defend public officials, federal officials who are sued in their official capacity. But we contend that plaintiffs are simply incorrect when they suggest that this was something that Donald Trump did in his official capacity. Donald Trump has had the ability to block anyone from his at-real Donald Trump account since long before his presidency. This is not an authority that he is wielding by virtue of his office. And so, there are many cases, yes. Just in the last few days, he's had tweets where he revoked the North Korean sanctions. He signed a proclamation, it was a video, signing the proclamation on the Golan Heights, Israel having sovereignty over that area. The announcement of an appointment to the Federal Reserve Board. And then the Washington Capitol celebration in the White House for winning the Stanley Cup. Those aren't official actions? We're not contending that he conducts speech on that account that are official statements. That is, we fully concede that there are statements on the at-real Donald Trump account that are certainly official statements. You're not contesting that he's not doing that. I think you said that he is doing that. There are official statements that are made on the account. The government has conceded that in many different cases. Regularly, persistently used, not just sporadically, right? Certainly. Regularly and persistently. Certainly there is speech made from at-real Donald Trump regularly that constitutes official statements. But that does not change the nature of blocking and whether governmental authority is... Why isn't this a public forum? So that goes to the second problem here. But again, we think that the question... So Your Honor, I... I don't care whether he goes to second or third. Yes. Well, at the first threshold, the fact that he is exercising power that he has in his personal capacity that he will continue to have after his president makes this not state action. And if a private individual we're trying to exclude, assuming, which we do contest that this is a public forum, and I would like to address that, but... So a president can engage in viewpoint discrimination after... When he's no longer president, he can still do it when he's president? That's not the case, Your Honor. The question is whether excluding someone from private property would be wielding the authority of the government. It's certainly the case that just... So for example, a president's private residence, they would still continue to be able... What sort of forum is this, in your view? This is not a forum at all, Your Honor. And if we'd like to move to... I am happy to explain why and move on from the state action question. So the fundamental question involved with a forum is whether the government has intentionally opened up property, whether it's government-controlled property first, and whether the government has intentionally opened up that property. But it can be privately owned property that is controlled by the government, though, like the Southeast Promotions case, where it's an auditorium that's owned by somebody else, a private party, but leased to the municipality. And the government there, the municipality, blocked the production of hair. And the Supreme Court said, you can't do that, even though it's owned by a private party. If you control that forum, which the city did, then your actions are state actions and it's a public forum. How is that different from blocking somebody here, saying, we're not going to allow the And the Supreme Court said that's a violation of the First Amendment for expressive speech. How is that different from blocking here, where, sure, Twitter's owned by somebody else, but... And it's a private action, you claim, of blocking. How is that different from that case? Well, respectfully, Your Honor, you should... We need to analyze who is blocking and what capacity they're doing that in, separately from what the forum is. Because if there were, assuming a public forum, and a private individual who were to come up and try and kick someone out of that forum, you wouldn't consider that to be government action subject to the First Amendment. So here, too... What if it were the President of the United States? I don't think that's true, Your Honor, because the President of the United States does many things in his personal capacity. And when we're talking about a personally owned account or a personally owned property, such as, for example, Crawford Ranch, or any of the other private residents that have been owned by the President, or presidents during their presidency, they still retain their identity. And the question... Are you seriously urging us to believe that the President is not acting in his official capacity when he is tweeting? I'm asking you to hold that he's not acting in his personal capacity when he is blocking. Well, before we get to the blocking, when he is tweeting, is he acting in his official capacity? Sometimes, yes. And I think the critical point here is that you have to analyze the conduct at issue here, the blocking, separately from other things that happen on that property. Certainly at the White House, individual personal actions take place that are not subject to the First Amendment. Similarly, things happen at Mar-a-Lago that might be official actions, but that doesn't change the fundamental nature, the private nature... It's a situation where there is a open, robust nation worldwide, if you will, dialogue on matters of transcendent public importance. And what the blocking does, and correct me if I'm wrong, is subtract from that discussion points of view that the President doesn't like. Why isn't that just a quintessential First Amendment violation, though? So I take issue with several of the things that were just said. So as to the forum point, it's important to keep in mind all of the things that people who are blocked are still capable of doing. I know what they're capable of. Right. But in a case in which they were actually excluded from a space, they would not, for example, hear things that people... It's not a defense to viewpoint discrimination. Sorry, I'm not sure I understand. The fact that someone can go down the street and express a point of view is not a defense to government suppressing a particular point of view. So I think that... And a forum that it's... I think that underscores the overall point here, which is that the at-will Donald Trump account is not a forum at all. Plaintiffs have attempted to analogize this to a, for example, a town hall that has been opened by Donald Trump intentionally for the purpose of having people respond to his speech, and they have to in order for their... What's missing? Just he doesn't have an intention for anybody to respond? Well, I think... So that's certainly true, that this is an account that has been opened up as a platform for his own speech. I think the more apt analogy here is if you think of Twitter writ large, not his account... Hasn't it been opened up to speech by all of the folks who are liking and replying? So I don't think that that's necessarily true either. And I think that the analogy I'm about to... To the physical realm I was about to give might help illustrate my answer to that question. Or, you know, Mar-a-Lago or... No. So I think the better way of thinking about how Twitter works is that Twitter itself... Sorry, let me just... We're obviously engaged in a great conversation here as we try to figure this out. So, Victor, if you would add five minutes to Ms. Utrecht's and I'll do the same for the plaintiffs in the case, the appellees. Thank you, Your Honor. If you think of Twitter writ large, the entire privately owned platform as, for example, a private shopping mall or a private park, there are many overlapping conversations that happen on Twitter. Each person uses their account in order to speak into that larger private forum. The discussions aren't happening specifically on at real Donald Trump. They're happening across Twitter in response to things that he has said. And the best example I can give of this is that the replies themselves aren't necessarily hosted on at real Donald Trump. If he were to delete a tweet, for example, the things that people have said directly to him would exist elsewhere. You could see them on the accounts that were... On the account of the Twitter... Of the individual account owner who had replied. They exist on a tab that says tweets and replies. And so really these comment threads under at real Donald Trump are better seen as sort of a record of the conversations that are happening across Twitter. So when Donald Trump blocks someone, he's not keeping them from these conversations. He's not keeping them from being... Isn't he? That's... There are ways to go around this with shadow accounts and other ways going on the internet. But it's still much more burdensome and not as effective as if you can simply respond to a tweet, reply to one of his tweets, or reply to a reply. I don't think that I would say it was much more burdensome. Certainly all of the... So it's... But isn't that Judge Parker's point though? For the First Amendment, it doesn't really have to be much more burdensome. If it's more burdensome at all, you have to move down the street, that violates the First Amendment. So the question of whether... If it is a forum, it does not have to be more burdensome. But the things that we have just discussed, the fact that people still have access to greater conversations that are happening in Twitter, shows that they are not burdened from their access to a forum, they are burdened from their ability to reply directly to at real Donald Trump. So what's the argument though that this is a public forum and that what we have here is viewpoint discrimination? The existence of a workaround is not a defense to that, is it? Under First Amendment jurisprudence. So if this were considered to be state action, an action taken in his official capacity and not his personal capacity, and this were to be considered a public forum, then of course viewpoint discrimination would not be permissible. But neither of those two elements are present here. This is both something conducted in his personal capacity and we can... When you say something conducted in his personal capacity, what does that mean? So... In light of the long parade... We can cite you endless, quite lengthy list of examples of what is undisputably official business being conducted on the Twitter. So that's certainly true, but again, we have to look at the individual nature of blocking and what power is being exercised when the president blocks someone. Excluding people whose viewpoints he disagrees with. And certainly private individuals do that all of the time and that does not violate the First Amendment. He's not a private individual. I mean, you're here because he is not a private individual. Your very presence here represents the fact that this is a public forum. Certainly Your Honor, but if he was on the street and someone approached him and he walked away from that person, we wouldn't say either that that was a choice or a power he was exercising by virtue of his governmental authority, nor would we say that his choice to walk away from that person and not hear their views was a forum. I don't see why that helps you. So I think it helps illustrate the underlying point here, which is that plaintiffs have been blocked from being able to directly reply to Donald Trump, but they are capable of having conversations both about his tweets, both continuing to criticize him, continuing to what he has to say. They are still part of the overall privately owned forum that is Twitter, but his account itself is, I think the better way of looking at it is he is not a regulator of a forum. He is a participant in a forum. He is participating in Twitter, not acting in a controlling way. He is choosing with whom he is going to engage with and have conversations with. But in the ordinary common sense physical realm, we don't think about those choices as creating a space or a forum. We think about them. The archives has said that all of the tweets are official records that must be retained and maintained and presumably find their way to the archives. Would you agree that the archives is entitled also to receive the replies and the retweets and the likes? So I am not an expert in presidential record keeping laws. I know that the standard is that the president's electronic communications, if we consider these to be electronic communications, that are related to the constitutional, statutory or official duties of his office must be maintained by the president so that they can be passed on to the next president in order to facilitate transitions. I am not sure whether we would consider things that people express to the president on the internet in all circumstances to be within that. The record with the likes and the retweets and so forth, do you think that the archives request doesn't cover them? I think there is reason to believe that it might not cover them, but again, I am not an expert on that area of law. That seems to make no sense if the tweet is an official public record, then the... Well, certainly there are many letters, for example, in the physical realm that would be sent to the president that I imagine there isn't a requirement for the president to keep every single letter that has been mailed to him. And similarly, I don't think there would be a requirement for every single reply to a statement he makes on his Twitter account to be kept and maintained by the records. But again, I... Do you think the president or someone in the White House then could go through the accounts and only retain, only turn over to the archives the tweets themselves? You think that would comply with the archives request? It's possible, but again, these are decisions that are usually made by White House lawyers and I'm not entirely familiar with how those decisions are made. The management is not handled by archives, but rather by the president and his staff themselves. All right. Thank you, Ms. Utrecht. Thank you, Your Honor. You have reserved three minutes for rebuttal. Thank you. Mr. Jaffer? Good morning, Your Honors. Jamil Jaffer for the plaintiffs. Public officials across the country now use social media to communicate with and to hear from their constituents. And these social media accounts often serve the same purposes as forums like city council meetings or school board meetings or town halls. The Fourth Circuit just said Facebook, utilized by a county supervisor, is a public forum. Is there any material difference between Facebook and the Twitter account here? The platforms are different. I think that in individual cases, the plaintiffs might be able to make a compelling case that a particular account on Facebook is a public forum. We were counsel to Davison in the Fourth Circuit case, so we think that that case is rightly decided. But I don't think that it follows from this case, from the district court decision in this case, that every public official's account on every forum, on every platform, is a public forum. I think you'd have to look at the way the account is used, what resources were used to support the account. What factors do we look at, then? Well, so I think that there are three paragraphs of the joint stipulation here that might be particularly useful to you. One is paragraph 39, which makes clear that the President uses official government resources in connection with this account, so other government officials have access to the account. They draft tweets for the President to post himself. Sometimes they propose language for tweets that the President posts. So this is not an account that the President operates on its own. It's an account that involves the substantial and sustained involvement or investment of resources by other government personnel. Second, paragraph 37 of the joint stipulation makes clear that the government has itself characterized the President's tweets as official statements, and I think we heard the government do that again this morning, but in a variety of contexts now, the government has characterized the President's tweets as official. The press secretary said that to the press, to the media, in a press briefing. The government has said it to various courts, including the Fourth Circuit. So I think there's no dispute that the President's tweets are official statements of the government. Even if that's true, what do you make of the argument that the blocking function exercised by him is a private function? That everything else may be a public forum, and it may be a public Twitter account, but the blocking function that he exercised is a private one? I'm not sure that these two things can be separated in that way, Your Honor. The only reason that the President is in a position to block people from a public forum is that he is the President. There's state action in the creation of the account. He's the owner of the Twitter account. Sorry, Judge Hall? No, he's owner of the Twitter account, and therefore can exercise that control because that comes with his ownership. That's right, Your Honor. That comes with his ownership. The government says that, well, every owner of a Twitter account is in a position to block in the same way that the President is. I think that that argument ends up proving too much, because it's also true that the private property is always in a position to exclude people from the private property, but that doesn't stop us from saying, when a city councilor, for example, excludes somebody from a city council meeting, that that person was acting in his or her official capacity. You know, the point here is that the President established this account in his official capacity. Not only is it impossible to separate the blocking from the establishment of the account, but even if you sort of focus on the reasons why the President blocked these particular individuals from the account- I thought he started the account in 2009. Isn't that stipulated, too? You're right, Your Honor. I didn't mean to say that he started it as President. He started it before he was President, but he began using it as President as an extension of his office. Once he began using it in that way, it became a public forum, and at that point, when he blocked people from the account, he was acting in his official capacity. If you look at the reasons why these particular plaintiffs were blocked, one of them was blocked after he complained about the President's immigration policies. Another was blocked after complaining about healthcare policies. Another was blocked after complaining about the President's policies with respect to Russia. Even if you focus myopically on the reasons why the individuals were blocked in this case, they were blocked for having criticized the President about his policies or criticized the President's decisions as President. I guess the other thing that might be worth pointing out- So, therefore, it's the President blocking, not Donald Trump, private citizen blocking. That's- Your Honor, I don't know of another case in which a public official- That's the question. Sorry, but- I don't know of any other case in which a public official has established a public forum and then excluded somebody from the public forum, and a court has said, well, the exclusion was done in the private capacity, whereas the forum was established in a governmental capacity. If there's a case like that, I don't know of it. It doesn't seem reasonable to separate these two things in that way. Although the other side has pointed out Hyannisport or the Bush Ranch in Texas. Those are private areas, even when the President's there. They are, Your Honor. Can't the President exclude people from those properties? Absolutely, Your Honor. Now, it would be a different thing if tomorrow President Trump said, I'm going to host a meeting or an open forum at Mar-a-Lago. Anyone who wants to come can come, and I'm going to announce, make official announcements relating to my presidency. I'm going to disclose our new policy with respect to North Korea at this forum. It's an official, and he describes it as an official forum. It's open to anyone, and then he decides at the last minute to exclude people who disagree with him. It seems to me that would be a violation of the public forum doctrine. That's not usually what happens at Mar-a-Lago. That's because he said it's open to anyone, but what if he has implicitly said it's really only open to people who are my supporters? Then I think you'd be talking about a different kind of case, Your Honor. Then I think— Why isn't that this case? Because the President didn't say that initially. The President opened this to everybody. There are 50 million followers to this account. There are cases like— Who haven't done that de facto, well, de jure, but de facto and de jure, having said nothing about who can participate, he has no ability then to limit this forum that he has, I'll say unwittingly, I'm not sure it is, but unwittingly created. On the basis of viewpoint. Now, if the President tomorrow decided that he wanted to institute some viewpoint neutral time, place, and manner restrictions on this account, I don't think those would necessarily raise First Amendment concerns. The reason this case raises those concerns is that the President blocked these individuals because they criticized government policy. That is stipulated. The parties have stipulated to that. I just want to point out one consequence of— Just so I have it, Mr. Jaffer, where's that in the stip? Do you remember? If you don't, don't worry about it. Right in the opening of the stip, Your Honor, the first paragraph of the stipulation. On this issue of blocking versus the establishment of the forum, I think it's worthwhile to consider the implications of the government's theory here. If the court were to hold that this kind of blocking is beyond the reach of the First Amendment, that would have implications far beyond this particular context. It would seemingly apply to the at POTUS account, to the at White House account as well. It would probably apply to every government website that has a comment, a space for public comment. I think you would be opening the door to distortion and manipulation of those spaces as well if you were to accept that line of argument. Could the President block anti-Semitic material from the tweet stream? I think that— Racist, rabidly racist material? I think that under—if the policy were viewpoint neutral, then I think that the First Amendment might permit it. I think you'd have to analyze the— Anti-Semitic? I think probably yes, Your Honor. I think you'd have to ask about the—so the way that the court has addressed these limitations or limitations that are imposed in the first instance, the court has asked whether those limitations are viewpoint neutral and whether they are necessary to facilitate the operation of the forum. So if you look at a case like Forbes, for example, which involved the public broadcaster that excluded somebody, one candidate, from a public debate, the court asked whether the limitations that the public broadcaster had placed on this particular space were viewpoint neutral and consistent with the purposes of the forum. I think that's the analysis. I don't know that—I know the answer, the ultimate answer to the question, Judge Parker, but I think that's the way that the court would analyze it. It would certainly be a different case from this one because we are stipulating in your hypothetical that it's not viewpoint neutral. Could I ask you about a decision of the district court below, and that is the district court found that only first order replies were in the public forum. You maintain that the whole thread is within the public forum. Why is that if the president's not involved in those replies to replies and retweets that other people are doing in the thread? Well, I think it's because while the president doesn't have direct control over what we do, the ability to block somebody from his account has an effect on that person's ability to participate on the same terms as other users at that level. So for example, if you are somebody who's been blocked from the president's account, you don't see replies to the president's tweets unless you follow the replier already independently. And even if you see that reply because you follow that person independently already, you don't see the tweet, the president's tweet, that initiated the whole chain. And so your ability to participate on the same terms as other users, you don't have the same ability to participate on the same terms as other users in the comment threads. Now ultimately, I don't think it makes a difference. Even though electronically by, I won't say microseconds, but you probably could put yourself in a position of being able to do that. You're right, your honor, that there are workarounds. The workarounds involve both time and burden, and that is sufficient to establish a First Amendment injury here. Assuming this is a forum. Assuming that it's a forum. A public forum, yeah. Judge Droney, just to underscore one point here, ultimately I don't think it matters whether the district court is right about the scope of the forum or we're right about the scope of the forum, because even on the district court's view, our plaintiffs were excluded from a public forum. And maybe there's a dispute about what the scope of the forum is, but the relief is the same in either case. You didn't cross-appeal this point. We did not. But you think we can reach it, or we need not to? I don't think you need to reach it, your honor, because again, it doesn't matter. The ultimate relief would be the same. Judge Hall, you asked the question, or you just said, if it's a public forum. I don't think the outcome of this case would be any different even if it weren't a public forum, because of our two other claims. Even if this is not . . . Once you get to state action, once you've established that this account reflects state action, then even if there's no public forum involved, the president has excluded the plaintiffs from a channel used to disseminate official government information, and he's excluded them for no reason other than viewpoint. And he has also similarly excluded them from a channel available to the public for petition, for petitioning the president for redress of grievances, and he's done it, again, for no reason other than viewpoint. So I think that we've litigated this case as a public forum case, because the public forum case law seems to fit very naturally with what the president's Twitter account is. But even if it weren't a public forum, I think that the government would have the same First Amendment obstacle to the argument that it is. So if we have a concern about, or choose to avoid analyzing whether it's a public forum . . . Or, sorry, let's . . . We find, hypothetically, that it's not a public forum. Do we need to send it back to the district court for further analysis? No, I don't think so, Your Honor. It's a purely legal question. We have a joint stipulation where the parties have set out the facts, and I think that the parties have briefed the legal question fairly comprehensively. So you could reach those. I don't want to dissuade you from reaching the public forum question. Again, I think that's the most natural body of law here, or the body of law that applies most naturally. And, you know, the only question you really need to answer, again, once state action is out of the way, the only question you need to answer is, was this space a space that the government opened up to the public at large for expression? And I think that question is easy to answer, because the whole point of Twitter is to facilitate interaction between users, to facilitate communications. If the government had wanted a one-way channel, it could have used a blog, or it could have just issued more frequent press releases. But instead, the president used his Twitter account. And Twitter is called a social media platform precisely because it allows people to respond to users and to respond to one another. So, I think that the question about, you know, whether the president intended to establish a forum is, again, relatively easy to answer. If there are no further questions, Your Honors, I'll rest our papers. Thank you, Mr. Jaffer. Ms. Utrecht, you've reserved three minutes for rebuttal. Thank you, Your Honor. A few short points. First, we do believe that the state action question is a threshold question that should be answered before addressing whether this is a forum or any of the plaintiff's other arguments. And I believe that the answer to that question— Because if it's not state action, then it's not a forum? Because if it's not state action, if it's action by a government official in their personal capacity, it cannot violate the Constitution. We see that in a number of things like 1983 cases and the like, where actions by people who are government officials but are acting in their personal and not official capacity, who aren't wielding the authority of the state to do something, do not violate the Constitution. Can you say that is the capacity in which the president is operating in this case? The president, when he blocks individuals from his personal Twitter account, is not exercising official action or wielding the power of the state in the same way that . . . Why not? If he were, yes. Sorry, just on that one, when you say the president, I just want to . . . Is the president himself actually entering the blocks? In the stipulated facts, that is stipulated, that Donald Trump himself is the person who blocked the plaintiffs in this case. Not anybody working for him? That's correct, Your Honor. Okay. And so, in the same way that, for example, if a president or any other public official were to exercise private property control, now we're not talking about a situation in which there's very obviously a meeting or something that has been opened where someone has said, I would like you to come talk and share with me your thoughts. We're talking about a situation where there's a blanket exclusion, I don't want you on my private property. That sort of thing is not exercising governmental control. And that brings me to the . . . Can I ask you this, though? Yeah. You have stipulated that Mr. Scavino, the White House social media director, was assisting President Trump in the tweets historically, since he's been president, right? So you're saying he wasn't involved in blocking at all? Is that what you're saying? That's correct. The stipulation clearly states that Donald Trump and not Daniel Scavino or any other member of the staff was the person who blocked the individual plaintiffs. And so, many of the difficult questions about state action are sort of assuming the forum question, which is that the government has intentionally invited people to express disagreement, criticism, compliments, whatever. The example was given of the Davidson Fourth Circuit case in which the Facebook page at issue was created and the government official specifically said the page was created in order to hear from the constituents. There was a clear and open invitation for this. By contrast, the at-deal Donald Trump account has always been used as a platform for his own speech. What plaintiffs would like to do here is reply directly to him. They would like to sort of use that account in order to amplify their own voice. But as we know from Minnesota Board of Community Colleges, that's not a right that's protected by the First Amendment. You concede that some proportion, perhaps a significant proportion of the tweets are in his official capacity. That's true. Yes, Your Honor. So could he block responses to tweets that emanated from in his official capacity? Twitter does not allow users to parse their tweets in that way. They have essentially two choices. They can either protect their tweets, which is they can only be seen by people they have agreed to have seen, which of course would limit both the amount of people, the audience for the tweets, as well as the amount of people who could reply. Or they can have tweets be visible and accessible to every member of the public, including those that don't have Twitter accounts, as Donald Trump has chosen to do here. But once that choice has been made, there is no ability to pick, for example, who can respond to a certain thing or to, as plaintiffs suggested, limit hate speech in some way. You either allow people to respond or you do not. So why doesn't that answer our question? If that's the nature of the debate, how can you possibly, consistent with the First Amendment, exercise blocking power? Because blocking power does not keep plaintiffs from a forum. Blocking power keeps plaintiffs from replying directly to Donald Trump, but as . . . It pushes plaintiffs into a workaround if they would like to speak directly to Donald Trump through his at-real Donald Trump account. But again, Minnesota Board of Community Colleges makes very clear that that's not something that's protected by the First Amendment. You can use the workaround to see the replies too, right? That's not true either, because the replies are available on Twitter writ large. The search function on Twitter would show the replies. The individual repliers' pages also host the replies. It takes the same amount of effort. They would go to the repliers' page instead of Donald Trump's page. In either case, it's one step. They're still free to converse with these other people, because the forum here, if we want to talk about it that way, is Twitter, not his page. Why are we limiting ourselves to that? Just walk me through how you get there, because that . . . I mean, we're at the nub of what's . . . Right, right. So I think the stipulated facts show several things about the way Twitter works. First is that the replies themselves aren't actually hosted on Donald Trump's page. They're hosted on the broader Twitter universe. Second, the plaintiffs have full access to everything that everyone has said to Donald Trump in the broader Twitter universe. I think the best way of thinking about the comment threads is that they're a record of these overlapping conversations that are happening. And of course, we also know from the stipulated facts that most of the plaintiffs have, in fact, continued to participate in these conversations. If they were actually excluded from a forum, none of that would be true. Now, as to plaintiffs' access to information and petition claims, again, this information is available fully to every member of the public, with or without a Twitter account. And of course, the right to petition doesn't necessarily give you a right to directly talk to a public official in any manner that you want. What the right to petition protects is the ability . . . it protects you against public officials punishing you for trying to petition. And that simply hasn't happened here, where I see no criminal penalties, financial penalties, the sorts of things that we ordinarily see in right to petition cases. Thank you, Your Honor. Thank you very much. Thank you both. Thank you both. Well argued. Well briefed. Well argued. Safe travels back to Washington. Thank you all. I will ask the clerk now, please, to adjourn court.